and Mr. Killian should be here for CSX and Ms. Del Sol for the United States. Mr. Killian, you may begin when you're ready. Thank you, Your Honors. Good morning and may it please the Court. The RRTA is a special payroll tax statute that applies only to railroads and their employees. This case is about the taxability under the RRTA of two particular items that CSX transferred to its employees, stock and then relocation benefits, payments that CSX pays in connection with moves that its employees make in order to make them whole. So is my understanding correct now that you and the government now agree that based on the Supreme Court's decision in Wisconsin Central v. United States, stock is not taxable compensation under the Act because it's not money or remuneration? Well, that is not money, yes, Your Honor. We certainly agree with that position. And so, indeed, the first point is that I believe the government agrees with us that the district court's judgment as to that particular item, the stock item, needs to be reversed. And so this appeal really comes up to the Court just on the second of the two items, relocation benefits. And while Wisconsin Central wasn't a case about relocation benefits, it was just about Some of the principles that the Supreme Court articulated in the course of interpreting the RRTA are useful for understanding our interpretation of the motion. You didn't make that argument, though, in your brief with regard to relocation benefits and moving expenses, and the government says you've waived that argument. Your Honor, I don't understand what argument you're raising. The question about in-kind relocation benefits, that's mentioned in one of the footnotes at our brief, opening brief, and it's also mentioned again in our reply brief. But the broader question, the one that is certainly not waived, is what is the meaning of E-1-triple-I, the exclusion for traveling or other bona fide and necessary business expenses? And that's the one I really want to focus the Court on today, because the resolution of that resolves the only remaining issue that's live between the parties on the appeal. And my point to that, Your Honor, is that although Wisconsin Central, which came out after all of our briefs here, speaks how the Court should interpret the RRTA. And there are a couple key principles that the Court articulated in connection with Stock that apply to the interpretation of E-1-triple-I. First, the RRTA is an 80-year-old statute that Congress has amended at least once every decade over all those 80 years, and it's important to understand the meaning of any individual provision in that statute at the time it was enacted, the original ordinary meaning at the time it was enacted. Later amendments can affect that original meaning, but only if Congress has made it clear that it intended those amendments to change the preexisting original meaning, if there's a positive repugnancy between the old and the new, or if there's some sort of irreconcilable conflict between them. And the other point we draw from Wisconsin Central, just as a table-setting matter, is that the RRTA and FICA may have similar purposes, but they are different regimes, very different regimes. And Congress, when it makes differences in how it writes FICA, how it writes the RRTA, those are differences that need to be respected, not differences that should be erased. And so the question for this Court is whether E-1-triple-I, the exclusion in the RRTA, means as the government claims that it covers only or excludes only traveling and travel-related expenses. That's wrong, Your Honor. The original meaning of E-1-triple-I, when it was adopted in 1976 and 1977, is clear. That catch-all, other bona fide and necessary business expenses, has not and never means just travel-related. The word traveling covers that all by itself. Congress would not have needed to include it. If we accept your argument, would we create a circuit split with the Fifth Circuit? If you accept our argument, Your Honors, we think the Fifth Circuit got the decision wrong. I guess I would just hesitate saying that it's a circuit split because when the Supreme Court in Wisconsin Central held that stock was not taxable under the RRTA, it effectively gutted most of the reasoning that the Fifth Circuit used in the BNSF case. The BNSF case presented the stock question, the relocation benefit question, and the same sort of statutory misinterpretation that drove the Fifth Circuit to get the stock issue wrong got the Fifth Circuit, drove the Fifth Circuit to get the relocation benefit question wrong. So, Judge Wilson, my view is ... Well, that's an interesting analysis that the Fifth Circuit uses. The Fifth Circuit says to construe the statute to exclude moving expenses would render Section 3231 sub E5 superfluous, violating the canon of construction that we use, that a statute should be construed so that no part of it is superfluous. Sure, and the Fifth Circuit was wrong about the superfluity of that. Why is that wrong? So E5, that exception, reaches a whole range of expenses, benefits, excuse me, that are excluded under the income tax provisions. A lot of them are fringe benefits, which is a collection of a range of expenses that employers give, or benefits, excuse me, that employers give their employees. A single one of those fringe benefits is qualified moving expenses. And so, as we explained in our brief, this is a situation where E1, III, and E5 have a little bit of overlap, to be sure, but it's not the kind of overlap that renders either section wholly superfluous. And that's, there's a high adjective, a high adverb that the Supreme Court puts when deciding whether there's an irreconcilable conflict, or a positive repugnancy, or a wholly superfluous provision. Congress has a little bit of overlap in its statutes all the time. The Supreme Court noted that in the Connecticut National Bank case. This court noted that in the Rhine v. Imagitus case. And this is a situation where E5 and E1, III have a teeny bit of overlap on qualified moving expenses, but neither provision would be rendered wholly superfluous. The Fifth Circuit erred in finding that E5 is specific to, and covers only, qualified moving expenses. If I could point- Before the new, before the new section was enacted, what was the IRS's treatment of relocation expenses under EI, III? There is nothing that we're able to ascertain as to what the court held, or excuse me, what the IRS had held about moving expenses under E1, III before E5 was added in 1984. But what is- What was the number of years? There were seven years between E1, III, and E5, although I should point out, Judge Jordan, that when Congress added E5 in 1984, E5 did not reference qualified moving expenses. This is a very important point. E5, when it was added in 1984, included a cross-reference to Section 132, which is an income tax section. And at that time, 132 did not reference qualified moving expenses. It was not until 1993, so almost 10 full years after E5 was put into the RRTA, that a different Congress was making amendments to 132 and included a cross-reference from 132 to 217, which is a qualified moving expense provision. So the government's theory, and the one that I think the Fifth Circuit sort of bought into, was that E5 changed the original meaning of E1, III. But in fact, E5, when it was put in, said nothing about moving expenses. And we know from the historical record that E1, III included much, much more than travel and travel-related expenses. For a while, there are no cases one way or another on moving expenses. There are cases on tools. There are cases on uniforms. There's cases on tuition. In other words, that's a lot more than just travel and travel-related. Our view is that in 1977, that catch-all really meant what it says, which is that it applies to other bona fide and necessary business expenses of whatever kind. Judge Jordan, there may not be a specific case applying that catch-all to moving expenses, but there's no specific case applying that catch-all, say, to copy paper. And if an employer gives $20 to its employee and says, go buy some copier paper because the copier's all out, that would be a reimbursement for a bona fide and necessary business expense. And the fact that there's no dispute in the historical record, in our view, supports the dispute amongst employers in the IRS that moving expenses were actually covered by this catch-all. And it wasn't until much later that this became an issue. The government makes an alternative argument that even if your statutory interpretation is the correct one, then you failed as a factual matter to satisfy the requirements of E-1-iii because you did not show that they were bona fide and necessary or reasonably expected to be incurred. So, I believe the government is wrong on that, Judge Jordan. This was briefed up on summary judgment. We had used a long series of statements of what we viewed were undisputed material facts that demonstrate the bona fides, the necessariness, and that these were business expenses. The government's response, their response below, just as there was... You were the first move-in for summary judgment? It was cross motions, Your Honor. Cross, okay. Who moves first? I believe they were simultaneous, Your Honor. Okay. But the government's entire response, if you read the brief that they wrote below, it says, we the government disagree that these are bona fide and necessary. But the question is, what's the because? It says, we believe they're not bona fide and necessary because E-1-iii is limited to travel and travel-related expenses. This case comes to the court not as a factual dispute. It comes to the court as simply a question of statutory interpretation. And if the court would like, I can walk through some of our evidence that we demonstrated below, but... So we're interpreting the statute differently, and the Supreme Court has instructed us that if there's any doubt or ambiguity, it has to be resolved in favor of the public. Your Honor, there is no doubt or ambiguity about the scope of what those words mean. The only question, and it's a factual question that every court will need to consider on a case-by-case basis, is has the employer demonstrated that these expenses are bona fide, that they are necessary, and business expenses? We believe we did that below. The government came at us there and here only on a question of statutory interpretation, not on a question disputing our facts. And that's because, Your Honors, these kinds of non-qualified moving expenses are widely commonplace throughout the United States. Indeed, the government itself and the federal travel regulations provides for a whole range of these similar kinds of expenses. What employers do, not just in the railroad industry, but throughout the United States economy, is they try to make their employees whole. But under CSX broad interpretation of E-1 III, couldn't an employee allege that or justify any payment under this exception? In other words, where are the limitations under your broad interpretation? So a key limitation, and one that I think addresses much of your concern, is that it must be in the form of a reimbursement, an allowance, or an advance. And an allowance, of course, is sort of these lump-sum payments that are estimated in advance to cover someone's upcoming expenses, whereas reimbursements and advances are receipt mechanisms, where there's a dollar-for-dollar exchange. That's a key component. But the statute has more than that. It must be bona fide. It must be done in good faith. It must be necessary to the business. And while the Supreme Court has said that the word necessary in business expense statutes like this is not a high bar, Judge Moore, it is still a bar. It still has some teeth that the employer, on a factual basis, must demonstrate, as CSX demonstrated below in moving for summary judgment without rebuttal from the government, that these were bona fide and necessary business expenses. There's one last issue I'd like to address, Your Honors, and I only have about six or seven seconds here. It's on the accountable plan alternative argument that the government has also raised. If I could have a moment or two now, I'd appreciate it. We'll give you another minute. Okay. Thank you, Your Honor. So the government has raised as sort of an alternative that even if we're right, Judge Jordan, that we also fail under these accountable plan rules. There are a number of problems with the government's accountable plan argument, and I'll rattle them off quickly because you only gave me a minute. The first is that it's far from clear that accountable plan rules, which are an income tax provision, actually cover moving expenses as a class. They refer to travel, the regulations refer to entertainment, but they don't refer to moving expenses like we have here. Second, the record shows that CSX got receipts when it was doing reimbursements, as E-1-triple-I allows. But what CSX didn't get receipts for is allowances, and this is the key point. Allowances, the whole concept of allowance, the defining characteristic of an allowance is that the employer and the employee don't have to get receipts from each other. Congress, when it put E-1-triple-I into the RRTA, was copying, cribbing from a FICA regulation. But one of the key differences is that FICA doesn't mention allowances. Congress added allowances because the railroads have a long tradition of giving lump sum payments to their employees to cover expenses. And the government's argument that we fail under accountable plan is essentially an attack on Congress's innovative adaptation of the FICA expense exclusion for the railroad. They're trying to delete allowances from the statute. I've already used my extra minute, Your Honors. I'd like to save the remainder of my time for rebuttal. All right. You may. Thank you, Mr. Killian. We'll hear from Ms. DelSol. Good morning. May it please the Court. Just as a preliminary matter, I would like to clarify that it is the government's view that Wisconsin Central does resolve the stock issue as stated in our letter to the Court on August 30th. And with respect to the in-kind benefits for moving expenses that would arguably not be money remuneration under Wisconsin Central, I did note, as I was reading back through the brief, that there is buried in a footnote that argument was made in the opening brief. But I think that's why some courts have said that waving in a footnote is not enough because several of us read that brief looking for that argument and didn't find it the first time through. But at any rate, we do acknowledge that the waiver can be excused in light of intervening Supreme Court precedent. But we think that a remand is required to figure out the amounts of any refunds and the extent of in-kind benefits because that wasn't fleshed out below. With respect to the remaining issue, CSX argues that cash reimbursements and allowances that it designates for moving expenses are excluded. And these aren't just, as Your Honors have recognized, there is an exclusion under E-5 that deals with a narrow set of moving expenses, basically the cost of the movers in the truck to move your things from one place to another and your lodging while that happens. And that's excluded under Section 27 . . . excuse me, it's deductible if the employee pays himself under Section 217 of the Code and then excluded if the employer reimburses it under Section 132. And then Congress incorporated that in E-5 and in the similar FICA provision, extending that to the employment tax context. And as the BNSF Court held, and I think it is still good law on this issue and to hold otherwise would create a circuit split, this specific provision in E-5 deals with moving expenses and E-1 triple I shouldn't be construed to have this broader effect. I think the better reading of E-1 triple I is that it was aimed at basically including in the RRTA what the travel regulation did for FICA. And it was aimed at excluding those kinds of expenses that employees incur while they're working for the employee, which would primarily be travel expenses. It's not aimed at what is a reasonable business expense for the employer. So CSX is really asking the wrong question. And I think there are several guides to interpretation that indicate that this is the correct reading. And first of all, it's a consistent reading with the more specific exclusion and gives meaning both to this language of E-triple I and to the specific exclusion in E-5. It also, as the BNSF Court pointed out, gives meaning to all these other exclusions that CSX's interpretation would make meaningless. I mean, it's not, their broad reading basically says anything CSX says would entice employees, good employees to stay with it or motivate employees or be good for its business can be excluded. And if you read it that way, not only the moving expense part of 3221 E-5 would be superfluous, but also the exclusions under 74 for employee achievement awards, exclusions for educational expenses that employers pay for employees that are needing their job, exclusions for meals and lodging. So there are a whole other host of things in 3231 E that would be made superfluous under CSX's reading. And I think if you look at- Did the IRS handle anything having to do with relocation expenses before E-5 was enacted? Well, if I can go into the history of the statute and sort of the nature of moving expenses has always been a personal expense. And initially under the code before the 1960s, it was a non-deductible personal expense, no question about it. And there was a lot of circuit authority, including from the Fourth Circuit, that said it's a non-deductible personal expense. In the 1960s, Congress added to the code a deduction for moving expenses. At that point, it put it in the section, Part 7 of Subchapter B, that deals with personal deductions. And at that point, it was still treated as a personal deduction. And then Section 162 generally deals with things that would be employees' expenses while they're working and business expenses under 172. So it was a separate section that provided this deduction. And at the same time, or I think just a couple years later, it added Section 82 to the code and it made clear that if someone else pays your moving expenses, that's income. And so you had someone else pays your moving expenses, it's income. If you pay them yourself, you get a deduction. And it stayed that way until the 1980s when Congress started making changes to the fringe benefit provisions and adding provisions that excluded certain fringe benefits because it found that there had been a lot of lack of clarity about which things were in and out with respect to fringe benefits. And at that point, it enacted Section 132 and then added in Section 132G, an exclusion for moving expenses from income tax, which then it incorporated in Section 3231E5, extending that to employment taxes and then similarly to FICA. So I think it's really bad. But my question is specific. So between the time that E1 III was enacted and the time that E5 was enacted, did the IRS have the occasion to take any position on relocation expenses in the railroad industry? Is there an opinion letter? Is there a litigated case? Is there anything? My understanding is that those were viewed as not excludable. No, no, no. And I'm not aware of any ruling. I'm asking for something official, not something that might have been talked about within the confines of the IRS building. Did the IRS take any position in anything? There was a longstanding view that if something was not, if there wasn't a specific exclusion or deduction and they didn't view, there was never to my knowledge anything that viewed E III as having that scope. Or not having that scope. Well, there was certainly, there was legislation, I mean, in acting regulations and that sort of thing. I think there was generally, there might be something in a preamble to a regulation somewhere that said one way or the other. But I think the service's understanding is that because there was this longstanding authority that moving expenses were personal and not excluded unless there was some other provision that they wouldn't, this provision 3231 E III didn't apply to moving expenses. I don't think anyone ever argued that they did. Your argument is based on the premise that the tax code is an understandable thing. And I think that premise can be attacked on a whole number of levels. One is that the tax code is not understandable in a lot of ways. The other is that Congress picks at it, modifies it, changes it here or there, but doesn't always try to make the entire thing a cohesive whole. And that's why it's been referred to as a labyrinth. So I'm trying to see whether or not the IRS took any formal position on the meaning of E IIII before E V was enacted. Because it seems to me that that's relevant. If the IRS had said in an opinion letter, although that's not technically binding, but it gives the IRS's view that E IIII didn't cover relocation expenses in the railroad industry, that would be an indication of a consistent interpretation by the service. On the other hand, if the IRS said, oh yeah, relocation expenses are covered, then that affects the analysis too because you've got a position that covers it, then you've got a new specific provision and you've got to figure out whether or not there is repeal by implication. But there's nothing out there, right? That's what Mr. Killian said and I think you're saying the same thing. There's nothing out there. I feel very certain that there's nothing out there that says that moving expenses would be excluded under E IIII and whether there was anyone who raised it in the period between 1976 when E IIII was added and the time E V was added, I would have to go back and look specifically at all the rulings that came out in between there to see if there was anything either in the government's positions in case law, which was ongoing in the FICA context, or whether there was anything in rulings that addressed that. But I'm sure that the government's position was that it was not that broad because Congress, when it enacted 3231 E IIII, it said very explicitly in the House Report 94-1465 that we cite in our brief, it specifically said it was trying to create an exclusion of the same scope as the FICA travel regulation. It was then 31.31 A1H and it's now been moved to A3. But that regulation, I think that language indicates that's what Congress was trying to do and that's what the IRS has always understood it to be doing. And there are several cases that were decided in the courts of appeals in the early 2000s and where they were in litigation earlier and what positions have been taken earlier, I would have to look into. But there was an American Airlines case in the Federal Circuit and the Jordan case in the Eighth Circuit that both looked at this language and said, looked at the FICA statute, the FICA travel regulation, which has almost identical language and explains it's about, not about what expenses are necessary to the employer, but about the kind of expenses that would be excludable if the employee incurred them while he was doing the business of the and was reimbursed for them. Those are the kinds of expenses that if the employee under Section 162 weren't reimbursed, he could deduct for things he did while he was working and moving expenses is not one of those things. And if the Jordan case Let me ask you to walk me through how this works in practice and maybe educate me a little bit. Under E-5, when, and referring to 132, when is an employee able to exclude a relocation benefit from income? If the employee moves for work and the employer pays for it, the employee can exclude only that portion of the relocation benefit that the employee could have deducted if the employee paid it himself under 217. And that's confined to the moving truck coming to the house, the movers loading the truck and that moving, being carried away, you know, taken to the next place and they're lodging while they move. And that's not an issue here. What we're talking about is all these other expenses that CSX says are necessary to it because it needs to pay the employees an incentive to move. It needs to pay the employees their closing costs, their realtors' costs, their pet boarding fees, their debris removal. And it does that to encourage the employees to move to the new location. But my point is that the employee's decision to move under the code generally and historically, and I can send the court a pre-217 case that explains this, is a personal view. And I think the Jordan case in the Eighth Circuit, which I cited that briefly This is a specific provision dealing with railroads. This is not the code as a whole. Well, the Supreme Court has directed in FDA v. Brown and Williamson that statutory construction is a holistic matter. So it's a matter of looking at these provisions within the whole context of 3231 and also where they fit into the code as a whole. And the Jordan case recognizes that these exclusions and in the Employment Act context pick up on the whole income tax concept of what are excludable and deductible employee expenses that the employee incurs in the scope of his employment. And it really, the Eighth Circuit very effectively explains how this language is intended only to focus on the things that the employee incurs while he is doing service for the employees, like for the employer, while he's on a business trip, while he's doing his job, and not these It's not something like moving expenses, that's a whole separate category of personal expenses. Let me get at this or try to get at this through another angle. Before E-5 was enacted, were normal, typical relocation expenses, the one you mentioned, having the moving truck pull up to the house, take the furniture out, put it in the truck and move it to the new residence, were those things captured within the ambit of E-1-triple-I? Were the normal, the things that were deductible under 217? I don't know what 217 is. 217 is the personal deduction for moving expenses. I'm not worried about that. I just want to know, before E-5 was enacted, CSX pays, says to an employee who works in, I'm going to make up a state, Montana, and says, we want you to move to Georgia. The employee says, it's cost prohibitive for me to move from Montana to Georgia, I can't do it. CSX says, we'll pay your move. They pay for a moving company to go to Montana or from Montana, pick up all of the household goods, pack them, move it all the way down to Georgia. Are those, CSX pays for that through a reimbursement to the employee. Did those come within the ambit of E-1-triple-I before E-5 was enacted? No, Your Honor. I think, because those were not expenses that the employee incurred while doing business, that was something that, No, but it's not, before E-5, it was not an employee-based focus. You're saying that now, No, I think it is. It always has been, and I think that's clear from the legislative history that E-1-triple-I was an employee-based focus. And that's the point of the Jordan case. Well, isn't it based on what was reasonably necessary, reasonably expected to be incurred in the business of the employer? By the employee when he's doing his work. And that's what the legislative history and the Jordan case explain. In Jordan, it was a situation where the employee was commuting, decided not to move because he didn't like the new town, and stayed in the old place, and the employer paid for him to fly to the new town. And the employer tried to claim under the similar FICA travel regulation that has the same kind of wording as E-1-triple-I, that that was a business expense. And the court said, no, that's a commuting, like moving expenses, is a personal expense. And I think that Jordan case is really instructive, and there's really no way to get around the legislative history that makes clear that E-1-triple-I, when it was enacted, was intended to have the same scope as that FICA travel regulation. But that was a temporary move rather than a permanent move, though, right? In Jordan, it was a permanent move. The company headquarters or the principal place of business where the employee's main job was had moved permanently. And so it wasn't like a situation of temporary where the employee has to, you know, be like a travel expense where the employee is just sometimes going there to do his job. I see I'm out of time, but if I could just briefly address this argument about the accountable plan rules, because I think the idea that all the employer has to do is to just designate something as a business expense is not what substantiation is generally about. But under the code, I think the bona fide language indicates that it is appropriate for the secretary to exercise the authority under 7805 and 6001 to impose appropriate regulations. This court in Trucks did apply in a FICA context, this accountable plan rules to employment taxes. And I would point out that in enacting the regulations that do incorporate the accountable plan rules in the employment tax context, the Treasury cited House Conference Report 100-998 at page 206, which specifically says that to the extent the secretary determines that it's appropriate and administratively sensible to extend these accountable plan rules to the employment context, the secretary may do so. So I think all those things give very explicit authority to impose these accountable plan rules, and they make sense as a way of keeping track whether these really are expenses of employees that were incurred in the business. And CSX's approach really is one of just leaving it to the company to designate what it thinks is necessary, and really anything under that category that it thinks will incentivize its employees would then be excluded. And that just doesn't seem like a reasonable view of the statute. So in closing, I'd just like to say that I think to rule for CSX on this issue would be create a conflict with the Fifth Circuit and would be at least an indirect conflict with the Eighth Circuit as well. And if there are no further questions, we just ask that the court affirm on that issue. Thank you for your time. Thank you, Your Honor. Just a few brief points. Judge Jordan, you're right to look at the plain meaning of E-1-triple-I. That's all we have before the relevant time period is 1993, because I think as the legislative history, statutory history is clear, in 1984 when E-5 was put into the code, there was no reference to qualified moving expenses at that time. It was additional legislative action 10 years later when Congress was just changing all these cross-references. We know we described it as a tree in our brief, and it kind of is labyrinthine that you've got a cross-reference to a cross-reference to a cross-reference. What happened in 1993 was Congress was tinkering on one of those very far-out cross-references that had this reverberating effect all the way back down to the RRTA, where this longstanding — well, E-5 sort of picked up qualified moving expenses. That was 1993, not 1984. But the point is, before 1993, there's no application that we're aware of one way or another on qualified moving expenses or unqualified moving expenses under E-1-triple-I. Rather, what we have is the thing that the courts have most of the time in cases like this, which is just the plain meaning of the statute. E-1-triple-I says traveling or other bona fide and necessary business expenses. Now, the fact that qualified moving expenses are already deductible and excludable shows that moving expenses as a category are legitimate business expenses. As you noted, Judge Jordan, the hypothetical of an employee moving from Montana to Georgia, it can be cost prohibitive for an individual to make a move, and it is important often for an employer to make the employee whole in the move, not to compensate them or remunerate them. But the government's counter to that factually, if not legally, is that you are seeking to add a lot of other categories that go beyond the actual moving expenses. Well, that I think is a bit circular, Judge Jordan, insofar as everything that we call relocation benefit are costs that an employee incurs while moving because we want them to move. Now, the qualified moving expense provision is limited by congressional fiat to discrete categories of moving expenses, but as we all know, you incur additional costs more than just the cost of a moving truck, more than just the cost of cardboard boxes. What CSX does in those situations is it makes its employees whole, and there's two authorities I could cite here. Does the IRS get to say to you those expenses are not bona fide and necessary, or can you put everything there without any questioning from the IRS? The IRS is allowed to. You can say, for example, on the way from Montana to Georgia, it was nice for you and your wife to go to a movie or to shop somewhere else and see a show, and we'd like to pay for that show. Absolutely, Your Honor, and that's the reason why we go to court and litigate this as a factual matter, to put the employer to the test of his proof. Have we demonstrated that it's bona fide, or were we just remunerating them on the side? The fact is, E-1-triple-I is limited to reimbursements, advances, and allowances, so it doesn't swallow the rest of the act. It doesn't allow us to call our compensation a business expense because that's not reimbursement. That's just the compensation that the employee gets, and so I guess I would like to— Has the record, in this case, developed enough so that— Yes. We completed discovery— Like, if you stop for dinner on the way from Montana to Georgia, and there's an issue about whether or not, you know, that would be an excludable, is the record developed in this case? It is, Judge Wilson. The buyer affidavit, which is included in the excerpts of record that we have and that was presented to the court below, explains how we accounted for all of these things and the particular types of expenses that were coded within our payroll system. And so I guess I'd like just to end, Your Honors, with where I began. This is a case about plain meaning. That's all we have. We believe the Fifth Circuit got the BNSF case wrong, but just as the Eighth Circuit decided to disagree with the Fifth Circuit and the Supreme Court ultimately vindicated the Eighth Circuit, this Court also should reject the Fifth Circuit's erroneous application of these canons of construction and rule for CSX. Thank you very much. All right. Thank you, Counsel.